No. 22-11092

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**IN RE SEALED APPELLANT,**
**Plaintiff-Appellant**

_____

**Appeal from the United States District Court
for the Northern District of Texas**

_____

**BRIEF OF APPELLANT**

_____

**F. CLINTON BRODEN**
**Broden & Mickelsen**
**2600 State Street**
**Dallas, TX 75204**
**(214) 720-9552**
**(214) 720-9594 (facsimile)**
**clint@texascrimlaw.com**

**Attorney for Appellant**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

**District Court Judges:**             David C. Godbey
                                       Sam A Lindsey
                                       Mark T. Pitman
                                       Barbara M.G. Lynn

**Appellant:**                         David Finn

**Prior Counsel for Appellant:**       Brett Stalcup
                                       Robert Webster

**Appellate Counsel for Appellant:**   F. Clinton Broden
                                       Broden & Mickelsen


                                       /s/ F. Clinton Broden
                                        F. Clinton Broden

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is requested.

# **TABLE OF CONTENTS**

**Page No.**

CERTIFICATE OF INTERESTED PERSONS..............................................................2

STATEMENT REGARDING ORAL ARGUMENT....................................................3

TABLE OF CONTENTS...........................................................................................4

TABLE OF AUTHORITIES......................................................................................5

STATEMENT OF JURISDICTION..........................................................................6

STATEMENT OF THE ISSUES...............................................................................7

STATEMENT OF THE CASE...................................................................................8

     I. Proceedings Below...................................................................................8

     II. Statement of the Facts............................................................................9

SUMMARY OF THE ARGUMENT.........................................................................15

     I. The Northern District of Texas Did Not Scrupulously Observe its Own Rules of Disciplinary Procedure in the Handling of this Case.....................................15

     II. The Sanction Imposed in this Case Was Not the Least Restrictive Sanction Necessary to Deter the Inappropriate Behavior At Issue...................................15

ARGUMENT............................................................................................................16

     I. The Northern District of Texas Did Not Follow Its Own Local Rules in Disciplining Mr. Finn....................................................................................16

     II. The Sanction is Excessive......................................................................17

CONCLUSION........................................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................................26

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

## <u>Cases</u>

*Andry*, ___ F.4th ___, 2023 WL 1513233 (Feb. 3, 2023)..............................................20

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998)......................................16

*In re Adams*, 2020 WL 4923330 (N.D. Tex. Aug. 20, 2020)...............................20, 21

*In re Andry*, 921 F.3d 211 (5th Cir. 2019).....................................................................16

*In re Luttrell*, 749 Fed Appx 281 (5th Cir. 2018)..........................................................19

*In re Ramos*, 670 Fed Appx. 353 (5th Cir. 2017)..........................................................20

*Matter of Thalheim*, 853 F.2d 383 (5th Cir. 1988)..........................................16, 17, 18

*United States v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995).........................................16, 19

## <u>Other Authorities</u>

N.D. Tex. Crim. R. 57.8(b)...................................................................................8, 17

N. D. Tex. Crim. R. 57.8(b)(1) − (4)...................................................................14, 16

N.D. Tex. Crim. R. 57.8(h)........................................................................................17

## **STATEMENT OF JURISDICTION**

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 as an appeal from a final decision entered by the United States District Court for the Northern District of Texas.

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether the Northern District of Texas Scrupulously Observed Its Own Rules of Disciplinary Procedure in the Handling of This Case.

II.     Whether the Sanction Imposed in This Case is Truly the Least Restrictive Sanction Necessary to Deter the Inappropriate Behavior at Issue.

## STATEMENT OF THE CASE

### I.  Proceedings Below

On March 24, 2022, the then Chief Judge of the Northern District of Texas, Barbara M.G. Lynn, entered an order convening a three-judge panel "to review the various incidents involving the conduct of attorney David Finn."  (ROA. 5)  Judge Lynn purported to act under the authority of N.D. Tex. Crim. 57.8(b).  (ROA. 5)

Rather than wait until the panel determined whether "further actions [were] warranted," Chief Judge Lynn issued an order the following day (March 25, 2022) suspending Mr. Finn from practicing in the Northern District.  (ROA. 5-7)  Judge Lynn's order stated that she was acting "on behalf of all the judges of the Northern District of Texas" and was doing so because Mr. Finn's actions "necessitat[ed] emergency relief."  (ROA. 6-7)

On April 13, 2022, a three-judge panel (the "Panel") of Northern District judges, consisting of Judges David C. Godbey, Sam A. Lindsay and Mark T. Pittman, issued an order for Mr. Finn to show cause why he should not be disciplined "for all or some of the following: (1) conduct unbecoming a member of the Bar; (2) failure to comply with a rule or order of the court; (3) unethical behavior; and; (4) inability to conduct litigation properly."  (ROA. 16-17)  The Panel also directed attorney, Michael P. Heiskell, to "investigate the conduct" of Mr. Finn and prepare a report (the "Heiskell Report").  (ROA. 16-17)

On May 11, 2022, Judge Lynn issued an order modifying Mr. Finn's suspension allowing Mr. Finn to practice in the Northern District provided he was "co-lead counsel with Robert Webster." (ROA. 53)

On August 29, 2022, the Panel held a hearing on its show cause order and received Mr. Heiskell's report. (ROA. 302-385)  On October 25, 2022, the Panel entered its Order Imposing Discipline.  (ROA. 284-289)  The Order indefinitely suspended Mr. Finn from practice before the Court but allowed him to reapply to practice before the Court "after one year of suspension, provided that such application must include evidence of continued sobriety during the period of suspension as well as an assessment by a duly licensed psychiatrist or psychologist reflecting that Mr. Finn is fit to practice law." (ROA. 288-89)  The Panel stayed its Order pending termination of an appeal to this Court.  (ROA. 289)

The Panel later clarified its Order in two ways.  First, the Panel clarified that the stay only allowed Mr. Finn to appear with Mr. Webster as co-counsel.  (ROA. 293)  Second, the Panel clarified that the "one year" period before Mr. Finn was allowed to reapply to practice in the Northern District did not include the period from March 25, 2022, when he was originally suspended by Judge Lynn to October 25, 2022, when the Panel issued its order of suspension.  (ROA. 299)

## II. Statement of Facts

The Heiskell Report cites several instances of inappropriate behavior on the part

of Mr. Finn. Significantly and as detailed below, all of the instances appear to have

occurred when Mr. Finn was under the influence of alcohol. Moreover, the Heiskell

Report noted that Mr. Finn "admitted his conduct and expressed remorse." (ROA. 56)

When interviewed by Mr. Heiskell and in other filings with the Court, Mr. Finn

attributed his inappropriate actions to alcoholism and mental health issues suffered as

a result of childhood abuse. (ROA. 56)

The following instances were detailed in the Heiskell report:

•First, it noted a "zoom" plea appearance by Mr. Finn before Magistrate
Judge Tolliver on June 11, 2021 in which he was not dressed
professionally and where he explained to Magistrate Jude Tolliver that,
as a result of ANTIFA rioters confronting him in his home, he had
broken his shoulder. During the plea colloquy, Mr. Finn interrupted
Magistrate Judge Tolliver on several occasions. At one point, after
Magistrate Judge Tolliver warned Mr. Finn to "watch yourself," Mr.
Finn told Magistrate Judge Tolliver to "watch yourself" and pointed out
that he recently got one of her rulings reversed by this Court. He also
accused Magistrate Judge Tolliver with trying to interfere with his ability
to speak to his client and with bullying him. Magistrate Judge Tolliver
believed Mr. Finn to be under the influence of drugs or alcohol and felt
disrespected by Mr. Finn. At the time Mr. Heiskell had interviewed
Magistrate Judge Tolliver, Mr. Finn had not personally apologized to
Magistrate Judge Tolliver. (ROA. 58-59, 67-86)

•Second, it noted an "informal video conference" in front of Judge
Brown on February 25, 2021 in which he repeated comments he said
were made to him by Emmitt Smith, a former Dallas Cowboy, at his
daughter's track meet wherein Mr. Smith told him that his daughter
"runs as fast as the darkies!" Judge Brown reported that she was
offended by Mr. Finn's comment and thought his racially charged "joke"
was offensive. A prosecutor on the video conference echoed Judge
Brown's feelings. (ROA. 59-60)

•Third, it noted dealings Mr. Finn had with Judge Lynn regarding a case in March-April 2022 that ultimately resulted in Judge Lynn's initial Order of Suspension. Mr. Finn missed a sentencing in Judge Lynn's court and when he was contacted by the courtroom deputy he said "it's no big deal it is only a sentencing." Mr. Finn then failed to appear for the reset date without any prior notice and then left a voicemail message saying he was in an in-patient alcohol rehabilitation program.[1] (ROA. 6-7,60-61, 99-114)[2]

•Fourth, it mentioned what Judge Scholer described as a "small troubling incident" in which Mr. Finn appeared in a video conference before her wearing a backwards baseball cap and no tie. (ROA. 61)

•Fifth, it described an incident with a court floor security officer in which Mr. Finn massaged her shoulders without consent and tried to do it again even after she told him not to touch her again. (ROA. 62, 115-20)[3]

•Finally, it described an incident with another court floor security officer where Mr. Finn got belligerent after being told family members of his client would not be allowed in the courtroom and where he told the deputy, "I'm Irish, a boxer, and do I look afraid of you." The officer stated he could smell alcohol on Mr. Finn's breath and that Mr. Finn had bloodshot eyes and a flushed face. (ROA. 62-63, 121-23)

The Heiskell Report also noted that, in June 2020, a three-judge panel had met

informally with Mr. Finn as a result of a report by Magistrate Judge Tolliver regarding

---

[1] Mr. Finn ultimately provided documentation establishing that he was, in fact, in an in-patient alcohol program during the second hearing he missed. (ROA. 29)

[2] Judge Lynn also provided Mr. Heiskell with a transcript of an August 27, 2021 status conference in which Mr. Finn told Judge Lynn that he was unable to meet the Court's plea deadline because of a "home invasion," broken shoulder, and contracting COVID. During the hearing, he also referred to his client as a "nervous nelly" and a thoughtful "crook" and to Judge Lynn as a "tough nut." (ROA. 61, 90-97)

[3] A male officer confirmed the female officer's account of Mr. Finn's actions and also described Mr. Finn pretending "to swat the backside of a female probation officer as she passed by him" unbeknownst to her. (ROA. 62)

his behavior as described above. (ROA. 57) The Heiskell Report also noted that Mr. Heiskell interviewed Judge Kinkeade, during which Judge Kinkeade opined that Mr. Finn "has taken ownership" of his issues regarding alcoholism and abuse, and family trauma. (ROA. 61) Judge Kinkeade also told Mr. Heiskell that Mr. Finn was an active member in his (Judge Kinkeade's) Sunday School class and that he was helping Mr. Finn in his "spiritual journey." (ROA. 61)

The Heiskell Report ultimately concluded that Mr. Finn engaged in the following misconduct:

> **Conduct Unbecoming a Member of the Bar** based upon his comments to Judge Tolliver and his incidents with the court floor security officers and the unidentified probation officer.

> **Failure to Comply with a Rule or Order of the Court** based upon the incidents with Judge Lynn.

> **Unethical Behavior** based upon his inappropriate comments to Magistrate Judge Tolliver, Judge Brown and Judge Lynn.

> **Inability to Conduct Litigation Properly** based on his statements and actions to judges as identified in the Report.

(ROA. 64-65)

As noted above, Mr. Finn attributed his behavior to problems with alcohol and childhood abuse issues. In connection with the disciplinary proceedings against him, Mr. Finn provided a letter from Arise Recovery Center, dated April 4, 2022, where he was attending an Intensive Outpatient Program, which included three-hour group

sessions three times a week and one hour of individual therapy one time a week. (ROA. 52)[4]  He also provided a letter from a therapist, dated April 22, 2022, who met with him once per week to concentrate on childhood issues dealing with physical, emotional, and sexual abuse.  (ROA. 22,46)  He also provided an April 23, 2022 opinion letter by a lawyer, John McShane, who has an extensive history of helping impaired lawyers.  (ROA. 32-45)  Based upon his evaluation of Mr. Finn, Mr. McShane believed that Mr. Finn had "an excellent prognosis for continued recovery" and that Mr. Finn was "unlikely to resume drinking if he continues to assiduously and proactively adhere to his recovery plan."  (ROA. 35)

In connection with the proceedings, Mr. Finn also provided accolades he had received from clients over the years[5] as well as media articles regarding high profile cases on which he worked.  (ROA. 145-82, 219-24, 226-33)  He also offered character letters from fellow lawyers attesting to his skills as a criminal defense attorney. (ROA. 48-51, 318-19)  Finally, Robert Webster, the attorney who had been monitoring Mr. Finn since Judge Lynn's May 11, 2022 Order, filed a pleading in which he explained:

---

[4]In connection with the Heiskell Report, Mr. Finn provided another letter from Arise, dated June 10, 2022, stating "Mr. Finn [was] admitted to our program on March 29, 2022 and had achieved successfully completion of IOP [Intensive Outpatient Program] as of June 9, 2022. (ROA. 125-27)

[5]It bears noting that there is no indication that any client ever expressed any dissatisfaction with the representation they received from Mr. Finn.

> I have been observing Mr. Finn now for nearly seven months.  He continues to demonstrate the highest levels of professionalism and competent advocacy in the course of his client representations.

(ROA. 281) Mr. Webster also went on to highlight two recent cases during which he observed Mr. Finn get superior results for clients.  (ROA. 281-82)

Ultimately, the three-judge panel appointed to the case, after having adopted the Heiskell Report, concluded that Mr. Finn "committed misconduct as follows: (1) conduct unbecoming a member of the Bar; (2) failure to comply with a rule or order of the court; (3) unethical behavior; and (4) inability to conduct litigation properly, all in violation of Local Criminal Rule 57.8(b)(1) – (4)."  (ROA. 286)  It then concluded, as noted above, that Mr. Finn should be indefinitely suspended from practice before the Northern District of Texas but allowed him to reapply to practice before the Court "after one year of suspension, provided that such application must include evidence of continued sobriety during the period of suspension as well as an assessment by a duly licensed psychiatrist or psychologist reflecting that Mr. Finn is fit to practice law." (ROA. 288-89)

## SUMMARY OF THE ARGUMENT

### I.    The Northern District of Texas Did Not Scrupulously Observe its Own Rules of Disciplinary Procedure in the Handling of this Case.

The Local Rules of the Northern District of Texas do *not* provide for a three judge panel to forbid an attorney from practicing before any judge in the district, yet that was the procedure that was employed in this case.  Rather, the  Local Rules provide that each presiding judge may act regarding an attorney's ability to practice in his or her court.

### II.    The Sanction Imposed in this Case Was Not the Least Restrictive Sanction Necessary to Deter the Inappropriate Behavior At Issue.

Mr. Finn's suspension, which was effectively a minimum suspension for 17 months, was not "the least restrictive sanction" necessary to deter his behavior giving rise to his discipline.  It was undisputed that Mr. Finn's misbehavior was rooted in his use of alcohol and that, when he is sober, he is an excellent attorney and a strong advocate for his clients.   As such, and certainly when comparing it to other disciplinary cases, there were a variety of lesser sanctions that the Northern District should have imposed using the "least restrictive sanction" test.

# **ARGUMENT**

## **I. The Northern District of Texas Did Not Follow Its Own Local Rules in Disciplining Mr. Finn.**[6]

As explained by this Court in *In re Andry*, 921 F.3d 211, 213-34 (5th Cir. 2019):

The district court must "observe *scrupulously* its own rules of disciplinary procedure." (citations omitted) (emphasis added)[7]

Similarly, "[b]ecause attorney suspension is a quasi-criminal punishment in character, any disciplinary rules used to impose [a] sanction on attorneys must be strictly construed resolving ambiguities in favor of the person charged." *United States v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995).

Significantly, Local Criminal Rule 57.8(b)(1) – (4) (emphasis added) for the Northern District of Texas provides:

A presiding judge, after giving opportunity to show cause to the contrary, may take any appropriate disciplinary action against a member of the bar for:

1. conduct unbecoming a member of the bar;
2. failure to comply with any rule or order of this court;
3. unethical behavior;
4. inability to conduct litigation properly...;

In other words, the Local Rules for the Northern District of Texas provide that the

---

[6]Whether a district followed its own local rules in imposing discipline appears to be a question of law which this Court reviews *de novo*." *Matter of Thalheim*, 853 F.2d 383, 387 (5th Cir. 1988).

[7]*See also Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 230 (5th Cir. 1998) ("Federal district courts are bound by the disciplinary rules they implement.").

presiding judge may act regarding an attorney's ability to practice in his or her court. The Local Rules do *not* provide for a three-judge panel to forbid an attorney from practicing before any judge in the district.[8]

Mr. Finn objected below to the failure of the Northern District to observe its own rules. (ROA. 374-76)  The Panel defended its "jurisdiction" to act by essentially saying 'that's the way it has always been done' in that it had been the Northern District's "long practice." (ROA. 284)  The Panel also noted that this procedure was preferable because it "has the added benefit of not placing an attorney's fate in the hands of the offended judicial officer." (ROA. 284)  Nevertheless, the panel failed to recognize that three judges were deciding Mr. Finn's ability to practice before each and every judge in the Northern District of Texas despite Local Rule 57.8(b) allowing each individual judge to make the appropriate determination for practice before his or her court.[9]

---

[8]When the Northern District Local Rules intend for a three-judge panel to have authority to act on behalf of all the judges of that district in matters of discipline, they do so explicitly. Indeed, the Local Rules specifically provide for a panel of three judges in matters of "reciprocal discipline." *See* Local Criminal Rule 57.8(h) (emphasis added) (Providing that, in matters of reciprocal discipline, "[i]f the member responds and, in whole or in part, opposes reciprocal discipline, the chief judge, or a district judge designated by the chief judge, *must designate three district judges to hear the matter.  The decision of a majority of the three-judge panel concerning the appropriate discipline shall be the final ruling of this court.*").

[9]One judge on the Panel also took the position that, regardless of the local rule, the three-judge panel was authorized by "the Court's inherent authority." (ROA. 375)  Nevertheless, this Court rejected that very position in *Matter of Thalheim*, 853 F.3d at 388 ("We point out, however, that a district court's inherent power to discipline attorneys who practice before it does not absolve the court from the obligation to follow its own rules which it has created in order to implement its exercise of such power.").

As noted above, this Court requires districts to "scrupulously" follow its own rules in regard to attorney discipline. For example, in *Matter of Thalheim*, 853 F.3d at 386-90, this Court reversed the Eastern District of Louisiana's discipline of an attorney after finding that the district failed to follow its own local rule requiring a recommendation from a panel of three attorneys before imposing discipline. The Court concluded its opinion in *Thalheim*, by noting:

> When a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure. If the rules are inadequate, the court can proceed to amend them. But unless and until such amendment occurs, attorneys have the right to rely upon the rules. A court cannot ignore and circumvent its rules at will to the detriment of those covered by them.

*Id*. at 390. Later, in *In re Andy,* 921 F.3d at 214-15, this Court again held that the Eastern District of Louisiana did not "scrupulously" follow its own rule. This time the district did not provide an attorney with a hearing before an *en banc* court pursuant to the local rules of that district and, as a result, this Court vacated the district's disciplinary order.

In sum, the Northern District rules, strictly construed, provide that a presiding judge may act regarding an attorney's ability to practice in his or her court. Whether advisable or not, this allows individual judges to control their own courtrooms. So, for example, if Judge Kinkeade believed Mr. Finn should have the ability to appear in his court based upon his observations of Mr. Finn, he would be allowed to do so

under the rules in place.  In circumventing these rules (with at least one panel member believing the Panel had inherent authority to discipline Mr. Finn regardless of the local rules), the Northern District did not "observe scrupulously" its own rules.

## II.  The Sanction is Excessive[10]

"As a general rule, 'the sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior.'" *In re Luttrell*, 749 Fed Appx 281, 286 (5th Cir. 2018).  Here, it should be recognized that Mr. Finn's minimum length of suspension is effectively **17 months**, not 12 months.  That is because he was fully suspended by Judge Lynn's Order from March 25, 2022, until May 11, 2022, and his ability to practice was severely curtailed from May 11th until the Panel decision to only allow appearances with Mr. Webster as  "co-lead counsel."

From the record, it would appear that Mr. Finn's misbehavior was rooted in his use of alcohol and that, when he is sober, he is an excellent attorney and a strong advocate for his clients.  Indeed, it should be recognized that there is no record of any client ever complaining about the representation they received from Mr. Finn.  It is also important to note Mr. Webster's observations from when Mr. Finn was required to have Mr. Webster as "co-lead counsel:"

> I have been observing Mr. Finn now for nearly seven months.  He continues to demonstrate the highest levels of professionalism and

---

[10]"Sanctions imposed against an attorney by a district court are reviewed for abuse of discretion." *United States v. Brown*, 72 F.3d 25, 28 (5th Cir.1995)

competent advocacy in the course of his client representations.

(ROA. 281)

This Court just recently noted that "courts have often imposed a 12-month suspension for misconduct creating *the appearance of impropriety*." *Andry*, ___ F.4th ___, 2023 WL 1513233, *6 (Feb. 3, 2023) (emphasis added). Yet this is not that. As noted above, Mr. Finn's discipline is effectively a minimum 17 month suspension and arises out of Mr. Finn's addiction and not the creation of the appearance of impropriety.

In *In re Ramos*, 670 Fed Appx. 353 (5th Cir. 2017), this Court found that a four-year suspension was excessive and reduced the attorney's suspension to one year. In that case, the attorney affirmatively lied to the District Court. *Id*. at 355.

Mr. Finn's punishment even appears comparatively excessive when compared to other disciplines imposed in the Northern District of Texas. In *In re Adams*, 2020 WL 4923330 (N.D. Tex. Aug. 20, 2020), the Northern District imposed a *six-month* suspension against an attorney whose calculated misconduct was egregious. Among other things, Ms. Adams lied to the government to the severe detriment of a client, refused to obey several court orders, lied to the panel of judges considering her discipline, refused to take any responsibility whatsoever for her actions, and continued to deny them. The opinion notes: "Ms. Adams' mendacities in *Spearman* and *Contreras* fall on a continuum of deception, and the pattern found in her lack of

candor and outright prevarications are on full display in proceedings before a

magistrate judge of this court and this panel." *Id*. at 17.

> It is difficult to comprehend how—following Ms. Adams' statements at
> the October 23, 2019 hearing, Judge Toliver's findings, and Judge
> Toliver's subsequent written order—Ms. Adams could with a straight
> face represent to this panel that she did not communicate with Contreras'
> sister; that, to the extent she did communicate with his sister regarding
> the case or accept a letter from her and file a motion on Contreras' behalf
> in response to the letter, these exchanges did not constitute
> communication with Contreras; and that, to the extent these exchanges
> did constitute communication with Contreras, she did not violate Judge
> Kinkeade's order because she did not initiate the communications.
> Indeed, the only plausible conclusions from Contreras' testimony, Ms.
> Adams' statements to Judge Toliver, Ms. Adams' assertions in her
> response to this panel, and her circuitous, if not completely inconsistent
> and disingenuous, answers to the panel's questioning, are that Ms.
> Adams knowingly violated Judge Kinkeade's September 12, 2019 order
> multiple times and that she attempted to conceal this from this panel
> through dissembling and untenable interpretations of the order itself.

*Id*. at 15.  Moreover, unlike in the case of Mr. Finn, there was "no indication in the

record, nor [was] it asserted, that Ms. Adams was laboring under some form of mental

limitation or malady when she engaged in the misconduct at issue." *Id*. at 17.  Finally,

and again unlike Mr. Finn, Ms. Adams "refused to acknowledge her own wrongdoing,

and, in fact, ha[d] learned nothing salutary at all." *Id*. at 18

> But what about her misconduct in the two cases that are the subject of
> this disciplinary matter?  Did Ms. Adams learn any pertinent lessons?
> Obviously not, because her response at the show cause hearing attempted
> to deflect her own blame, shift the blame to others, and contemplate
> changes in behavior that would actually exacerbate the misconduct that
> gave rise to this proceeding.  Indeed, "[a] fair inference from h[er]
> repeated violations of h[e]r ethical and moral obligations ... is that [s]he

intentionally" violated court orders and made misrepresentations to cover up her misconduct, "knowing that it was wrong." *In re Ray*, 951 F.3d at 655. This factor weighs in favor of suspension because it "suggests that something more than reprimand is required." *In re Grodner*, 2014 WL 4365080, at *8 (imposing suspension where attorney "brazenly refused to acknowledge her culpability, insisting that her misrepresentations were, at most, 'technical[ ]' errors.").

*Id*. at 19.

As noted above, there appears to be no debate that Mr. Finn is an excellent attorney who comports with all rules and represents his clients zealously when sober. It also appears that he has taken substantial steps to maintain his sobriety since being released from inpatient treatment in March 2022. Moreover, as the Heiskell Report notes, Mr. Finn "admitted his conduct and expressed remorse" and, as Judge Kinkeade observed, Mr. Finn "has taken ownership" of his issues. (ROA. 56, 67) This stands in stark contrast to many discipline cases.

Here, the question is what is truly the "least restrictive sanction" needed to "deter the inappropriate behavior?" If that is truly the standard to be applied, the "least restrictive sanction" is one that monitors Mr. Finn's sobriety, but allows clients the benefits of his advocacy. This could be done by modifying the suspension to require Mr. Finn to appear with co-counsel for some period of time and/or providing regular updates from treatment providers and/or appointing a monitor (at Mr. Finn's expense) to monitor his sobriety. In the end, however, a minimum suspension of one year (which, as noted above, is really 17 months) is *not* the "least restrictive sanction"

needed to "deter the inappropriate behavior."

## **CONCLUSION**

For the foregoing reasons, the sanction against Mr. Finn should be vacated and the case should be remanded to the judges of the Northern District of Texas for proceedings consistent with this Court's opinion.

Respectfully submitted,

/s/ F. Clinton Broden
F. Clinton Broden
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Appellant

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

> this brief contains <u>4,231</u> words, excluding the parts of the brief exempted
> by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using
> WordPerfect software in Times New Roman 14-point font in text and
> Times New Roman 12-point font in footnotes.


/s/ F. Clinton Broden
F. Clinton Broden